**Samuel R. PIERCE, Jr., Secretary of the United States Department of Housing and Urban Development, Plaintiff-Appellee,**

**v.**

**Dr. Eugene WINOGRAD, et al., Defendants-Appellants.**

No. 83–2640.

United States Court of Appeals, Fifth Circuit.

April 15, 1985.

Kirklin, Boudreaux & Joseph, Glen M. Boudreaux, Tim S. Leonard, Bruce K. Watkins, Houston, Tex., for defendants-appellants.

Daniel K. Hedges, U.S. Atty., R.W. Rodrigues, C.J. (Neil) Calnan, James R. Gough, Linda M. Cipriani, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, WISDOM, and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

Eugene Winograd challenges the district court's enforcement of subpoenas issued by the Department of Housing and Urban Development (HUD). Winograd contends that HUD lacked authority to issue the subpoenas. He argues that the existence of a local fair housing ordinance substantially equivalent to the federal Fair Housing Act required HUD to delay its investigation until the local fair housing agency had an opportunity to conduct its own investigation. The district court rejected Winograd's premise of substantial equivalency. We affirm.

I

Appellants (collectively referred to as "Winograd") own and operate an apartment complex in Houston, Texas. Janice Clay and Regina Cooper sought to rent apartments within the complex. After being denied apartments, each filed housing discrimination complaints with the Houston Fair Housing Division. They also filed complaints with HUD.

During its investigation of the complaints, HUD issued subpoenas ordering Winograd to testify and produce records. He refused. HUD then petitioned the district court to enforce the subpoenas. The district court granted HUD's petition, and Winograd appealed.

The district court stayed its order pending Winograd's appeal. A Fifth Circuit panel vacated the district court's stay order in response to a motion by HUD. The district court scheduled a show cause hearing for contempt. The Fifth Circuit panel denied Winograd's second request for a stay. Winograd then appeared in response to the subpoenas, testified, and produced the requested records.

II

HUD maintains that Winograd's appeal should be dismissed as moot because Winograd has already complied with the subpoenas HUD sought to enforce. Winograd contends that the appeal is not moot. Winograd argues that he has standing and an interest in the outcome of the appeal because he owns a substantial number of apartments and is subject to future action by HUD. He also argues that the issue of HUD's authority to issue the subpoenas is capable of repetition but evading review because he will be unable to obtain appellate review before being compelled to comply.

Although a case may appear to be technically mooted, a continuing controversy exists if the problem is likely to recur yet evade review. *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1984); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). For a case to fall within this category, two requirements must be met: (1) the duration of the challenged action must be too short to allow full litigation; and (2) a reasonable expectation must exist that the same party will be subjected to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per

curiam); *Sosna v. Iowa,* 419 U.S. 393, 400–02, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975).

HUD denies that Winograd can reasonably expect to be subjected to the same action in the future. Before HUD can initiate an investigation, it must receive a housing discrimination complaint from a third party. *See* 42 U.S.C. § 3610(a). Even if a third party filed a complaint, HUD might decide not to resolve it or might conduct an investigation without issuing a subpoena to Winograd. If Winograd cooperated with the investigation, no subpoena would be necessary. Finally, even if HUD issued a subpoena, Winograd would have to decide not to comply before he would be subjected to another enforcement proceeding. HUD contends that this chain of events is too tenuous to satisfy a requirement of reasonable expectation, and that Winograd's assertion that the present controversy is capable of repetition is merely speculative. *Cf. Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1975) (per curiam) ("mere physical or theoretical possibility" insufficient).

HUD also argues that its authority to issue subpoenas need not evade review because Winograd can test HUD's authority by refusing to comply with the district court's enforcement order. Winograd contends that he should not have to risk contempt to support his position. HUD's argument derives support from *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). In *Ryan,* the United States Supreme Court held that the recipient of a subpoena "must either obey its command or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *Id.* at 532, 91 S.Ct. at 1581–82. A good faith test of the court's order through contempt would have implied no disrespect toward the court. Rather, such a test of the court's order is consistent with the highest standards of the legal profession. *See* Model Code of Professional Responsibility EC 7–22 (1979).

■ Winograd's compliance with the HUD subpoenas raises a substantial jurisdictional question. We decline the opportunity to resolve it. Instead, we pretermit the mootness issue because we conclude that Winograd's appeal lacks substantive merit. *Cf. Koehring Co. v. Hyde Construction Co.,* 324 F.2d 295, 296 (5th Cir. 1963) (pretermitting jurisdictional question). From a standpoint of purely logical application of basic legal principles, Judge Higginbotham's dissent on this point is well considered. Our deliberate choice, however, is to dispose finally of the appeal on its merits and pretermit a difficult jurisdictional issue which, if resolved as Judge Higginbotham suggests, would leave the clearly meritless basic issue undecided. This prerogative is authorized by 28 U.S.C. § 2106. Under its authority, we may enter orders that will best accommodate the interests of justice.

### III

■ Section 810(c) of the Fair Housing Act, 42 U.S.C. § 3610(c), prohibits HUD from investigating a housing discrimination complaint if a local fair housing law provides substantially equivalent rights and remedies. The district court held that HUD was not prohibited from investigating the complaints filed by Janice Clay and Regina Cooper because the rights and remedies provided by Houston's Fair Housing Ordinance, Houston, Tex., Code §§ 15½–11 to –23 (1975), were not substantially equivalent to those provided by the Fair Housing Act, 42 U.S.C. §§ 3601–3631.

Winograd contends that the rights and remedies provided by the two laws are substantially equivalent. He maintains that the district court erred by deferring to HUD's determination that substantial equivalency was lacking. He argues that the court must make an independent determination of substantial equivalency.

We need not decide whether the district court could properly rely on HUD's determination that substantial equivalency was lacking because we conclude that the court also made an independent determination.

The court did state in its enforcement order that it was deferring to HUD's interpretation of the Fair Housing Act. As the order makes clear, however, that deference was based on the court's independent examination of the two laws, and its conclusion that the remedies provided by the local ordinance and the federal statute revealed several significant differences.

The district court's holding on the issue of substantial equivalency is factually and legally correct. Comparison of the two laws demonstrates that the exemptions and exclusions in the local ordinance are broader than those in the federal statute. *Compare* Houston Code § 15½–15(A), (D) *with* 42 U.S.C. §§ 3603(b), 3607. The local ordinance allows injunctive relief and fines; the federal statute allows actual and punitive damages, in addition to injunctive relief. *See* Houston Code § 15½–23; 42 U.S.C. § 3612(c). The local ordinance requires the complaining party to file a complaint within 60 days of an alleged violation; the federal statute provides 180 days within which to file a complaint. *See* Houston Code § 15½–17(D); 42 U.S.C. § 3610(b).

HUD's ability to compel compliance with its investigations is also greater than the local agency's. Section 811(a) of the federal statute authorizes HUD to issue administrative subpoenas during its investigations. 42 U.S.C. § 3611(a). HUD's legal position after it has issued a subpoena is superior to the position of the local agency. Section 811(e) allows HUD to petition for an enforcement order in federal court if the subject of the subpoena refuses to comply. In contrast, the local ordinance gives the local housing agency no independent authority to secure compliance with its investigation. If the local agency is unable to resolve a complaint, it must deliver the matter to the city attorney, who then decides whether to file suit. *See* Houston Code § 15½–18(E). As the district court noted, the local agency's lack of subpoena authority is a substantial difference in the remedies provided by the two laws.

## IV

■ We find no merit to Winograd's contention that HUD's subpoenas violated his fourth amendment protection from unreasonable searches and seizures. The district court properly concluded that the subpoenas were based upon the existence of probable cause to believe that violations of the Fair Housing Act had occurred. The subpoenas sought evidence that was necessary and relevant to HUD's investigation of the complaints.

We also reject Winograd's contention that the district court committed reversable error by requiring him to prove that the two laws were substantially equivalent. The laws were before the court. A legal comparison of the local ordinance and the federal statute reveals a lack of substantial equivalency between the rights and remedies provided by the two laws. Thus, we need not decide which party might have to bear this burden in another context. There was no error in this case.

Accordingly, the order of the district court is

AFFIRMED.

PATRICK E. HIGGINBOTHAM, Circuit Judge, dissenting:

There is no case or controversy before the court and I dissent from the decision of a now hypothetical question. It is tempting to decide the merits of this case, simple as they are, and lay the matter to rest. But we cannot pretermit the question of mootness, because mootness is a matter of Article III power.

Appellants have complied with the subpoenas they would have us hold were improperly issued. If they had prevailed on the merits of their challenge, we could have given them no relief. We have many times concluded that compliance with an IRS subpoena seeking production of testimony and records renders an appeal from an enforcement action moot. *United States v. Sweet,* 655 F.2d 54 (5th Cir.1981); *United States v. First American Bank,* 649 F.2d 288 (5th Cir.1981); *Baldridge v. United States,* 406 F.2d 526 (5th Cir.1969); *Lawhon v. United*

**718**

*States,* 390 F.2d 663 (5th Cir.1968). This case is no different.

Appellants suggest that the case falls within a narrow band of controversies which are "capable of repetition, yet evading review." Ordinarily, this doctrine applies when challenged action is too short in duration to be fully litigated and there is a reasonable expectation that the same party will be subjected to the same action again. *See, e.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972). There is no pattern of regulatory activity undertaken by HUD which will necessarily implicate the concerns of the appellants. Appellants claim to be the owners of a great number of apartment houses, but action by HUD results only on complaint of third parties. To find this possibility as "capable" of repetition reads "capable" in a too speculative manner. There is a point at which there is no longer a controversy. I draw the line short of appellants' present contention.

Finally, a future enforcement action will "escape" review only if appellants again choose to obey the subpoenas. That is, to conclude that this case would yet escape review effectively overturns our settled rule that such subpoenas cannot be attacked by persons obeying them. There is no exigency here to drive our reading of Article III beyond that created by the appellants. Thus this case differs from cases presenting a temporary status such as pregnancy, a residency requirement, or student enrollment, where the change in status is not a procedural choice of the litigant but rather is inherently vulnerable to the time required for judicial decisionmaking.